# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| THOMAS E. DOUGHTY, | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | No. 17-5018 |
| | : | |
| WELLS FARGO BANK, N.A., | : | |
| U.S. BANK, N.A. as trustee for | : | |
| GOVERNMENT NATIONAL MORTGAGE | : | |
| ASSOCIATION REMIC TRUST 2007-049, | : | |
|     Defendants. | : | |

McHUGH, J.                                                                                                                                        April 12, 2018

## **MEMORANDUM**

       This federal action follows upon a state court foreclosure case lost by Plaintiff Thomas Doughty. The central question is whether any claims survive in light of the state court adjudication against him. I conclude that Mr. Doughty's claims arising out of the mortgage foreclosure are barred by the outcome of the state court action, and that his related claims have other fatal flaws. Accordingly, Defendant Wells Fargo Bank, N.A.'s Motion to Dismiss will be granted.

       Plaintiff is the former owner of a home in Phoenixville, PA, which he lost in a foreclosure action that led to a sheriff's sale on November 16, 2017. Plaintiff asserts claims for wrongful foreclosure, Compl. ¶¶ 18–24, ECF No. 1, violations of the Fair Debt Collection Practices Act, *id.* ¶¶ 25–31, intentional infliction of emotional distress, *id.* ¶¶ 32–37, and seeks a declaratory judgment voiding the sheriff's sale and returning the property to him, *id.* ¶¶ 38–45. Plaintiff's claims all hinge on his contention that Wells Fargo did not have standing to foreclose on the property because it had assigned the promissory note [hereinafter "the Note"] connected

with the mortgage on the property to a Ginnie Mae trust, and that Defendant "fraudulently made a misrepresentation of fact that it was the holder of the Note" in initiating foreclosure proceedings. *Id.* ¶¶ 20–21, 28–29, 36.

The Court of Common Pleas of Chester County has already resolved Plaintiff's allegation of fraud. In his Answer to Defendants' Complaint in Foreclosure, Plaintiff raised allegations identical to those presented here, contending that Wells Fargo had sold the Note, and thus had no legal interest in the property. *See* Defs.' Ex. C, ECF No. 6-6. Wells Fargo filed a Motion for Summary Judgment on its foreclosure complaint, Defs.' Ex. E, ECF No. 6-8, and in response, Plaintiff offered an affidavit from an individual named Joseph R. Esquivel, Jr., which stated:

> My research through professional services and the viewing of actual business records and Corporate/Trust Documents, determined that an interest in the Thomas E. Doughty Mortgage Loan Instrument was sold sometime shortly after July 12, 2007 to multiple classes of the Ginnie Mae REMIC Trust 2007-049.

Defs.' Ex. F, ECF No. 6-9. The Court of Common Pleas, however, noted that Wells Fargo had presented copies of both the mortgage and the Note. The court also found that, aside from Mr. Esquivel's affidavit, Plaintiff had not provided copies of any documents that Mr. Esquivel relied on in reaching his conclusions. Having found that Wells Fargo's documentation demonstrated its standing to bring a foreclosure action, the court granted Wells Fargo's motion. *Id*.

Plaintiff then filed a Motion for Reconsideration, in which he offered documentation supporting Mr. Esquivel's affidavit. Defs.' Ex. G, ECF No. 6-10. The court, in denying Plaintiff's motion, recognized that "Defendant provided the full report and documents related to Joseph R. Esquivel, Jr.'s Affidavit." *See* Defs.' Ex. I, ECF No. 6-12. After reviewing the additional filings, however, the court found that "[t]hose documents still do not support the assertion that 'an interest in the Thomas E. Doughty Mortgage Loan Instrument was sold sometime shortly after July 12, 2007 to multiple classes of the Ginnie Mae REMIC Trust 2007-

2

049.'" *Id.* In sum, the Court of Common Pleas considered and rejected the same theory on which Plaintiff now seeks to proceed in federal court.

In the present action, Plaintiff's claims all stem from the premise that the underlying foreclosure action was improper. In effect, Plaintiff seeks to relitigate the state court's judgment. Based on the outcome of the state court proceedings, Plaintiff's claims are barred by collateral estoppel and the *Rooker–Feldman* doctrine. Plaintiff has also failed to adequately allege his FDCPA and intentional infliction of emotional distress claims.

Defendants argue that claim preclusion should bar Plaintiff from proceeding with this action. Defs.' Mot. 16–18. While claim preclusion might apply, Defendants' argument is in many respects presented as one of issue preclusion, and in technical terms, the case is more appropriately analyzed in that way. In evaluating the preclusive effects of the state foreclosure judgment, I must apply Pennsylvania law. *Metro. Edison Co. v. Pa. Pub. Util. Comm'n*, 767 F.3d 335, 350–51 (3d Cir. 2014) (citing 28 U.S.C. § 1738 and *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). Under Pennsylvania law, "[t]he doctrine of collateral estoppel precludes relitigation of an issue determined in a previous action if: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment." *Office of Disciplinary Counsel v. Kiesewetter*, 585 Pa. 477, 484, 889 A.2d 47, 50–51 (2005).

Courts in the Third Circuit have applied Pennsylvania law to preclude plaintiffs from re-litigating a mortgagee's standing to initiate a foreclosure proceeding. In *Humphreys v. McCabe,*

*Weisberg & Conway, P.C.*, 2016 WL 9024599 (E.D. Pa. 2016), *aff'd*, 686 F. App'x 95 (3d Cir. 2017), plaintiff brought FDCPA claims against the mortgagee's foreclosure counsel, alleging that counsel made false statements about the mortgagee's standing to initiate foreclosure proceedings. As a defense to the state foreclosure action, the plaintiff had raised the same allegation and presented supporting evidence. *Id.* at *5. The court found that, because the state court granted the mortgagee's motion for summary judgment in the foreclosure action, the state court necessarily determined that the defendant had not made false statements. Because the state court resolved this issue in granting the mortgagee's motion for summary judgment in the foreclosure proceeding, and because all other elements required for the application of collateral estoppel were met, the court dismissed the plaintiff's FDCPA claims. *Id.* at *5–6.[1]

Similarly, collateral estoppel clearly applies to this case. First, by granting Wells Fargo's Motion for Summary Judgment, the state court decided the same issue that forms the basis of each of Plaintiff's claims here. As a defense to the foreclosure, Plaintiff argued that Wells Fargo fraudulently represented that it held the Note and had standing to foreclose on the property. In rejecting this defense, the court necessarily determined that this representation was not fraudulent. Second, the state court's decision to grant Wells Fargo's Motion for Summary Judgment, and subsequent denial of Plaintiff's Motion for Reconsideration, constituted a final adjudication on the merits. Third, Plaintiff was a party to the state court proceeding. Fourth, Plaintiff had a full and fair opportunity to litigate this issue, and he in fact did so on multiple occasions. *See Humphreys*, 2016 WL 9024599 at *5 (finding that state court foreclosure proceedings provided a full and fair opportunity to litigate the issue). Plaintiff submitted briefs that detailed why he believed Wells Fargo did not have standing, and submitted supporting

---

[1] The Third Circuit judges who affirmed in a non-precedential opinion approved of the analysis of the district court.

evidence, including Mr. Esquivel's affidavit stating that "an interest in the [mortgage] was sold . . . to multiple classes of the Ginnie Mae REMIC Trust []." Defs.' Ex. F, ECF No. 6-9. In his motion for reconsideration in the state foreclosure action, Plaintiff also submitted documents supporting Mr. Esquivel's affidavit. Defs.' Ex. G, ECF No. 6-10.[2] Fifth, because Wells Fargo could not proceed with the foreclosure without having standing, the state court's determination was central to the final determination. Because the doctrine of collateral estoppel precludes Plaintiff from re-litigating the question of whether Wells Fargo fraudulently misrepresented its standing to bring the foreclosure action, Plaintiff's claims here must be dismissed.

Additionally, although the *Rooker–Feldman* doctrine has been significantly narrowed, I believe it is properly applied here to the extent that Plaintiff's claims seek review of the state court proceedings. *Rooker–Feldman* applies when four criteria are met: "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complain[s] of injuries caused by [the] state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). Here, by asserting wrongful foreclosure and declaratory judgment claims, for practical purposes Plaintiff seeks relief from the state court's judgment in the foreclosure proceeding; both claims require this court to "review and reject" the state court's foreclosure judgment. Because all four elements from *Great*

---

[2] Plaintiff also filed with the Court of Common Pleas a motion titled "Emergency Defendant's Counterclaim and to Portray and Assert Newly Discovered Evidence, Reverse Judgment and to Cancel the Scheduled Sale," Defs.' Ex. H, ECF No. 6-11, raising the same arguments as before. The court again denied Plaintiff's motion. Defs.' Ex. K, ECF No. 6-14. Most recently, Plaintiff filed an "Emergency Petition to Reverse the Sale of Defendant's Property and to Deny Confirmation of Title and Notice of Filing Complaint Case in The United States District Court of Pennsylvania," *see* Pl.'s Br. 1, ECF No. 13, but the Court of Common Pleas of Chester County on March 12, 2018, denied and dismissed Plaintiff's petition with prejudice, Defs.' Ex. A, ECF No. 14-2.

*Western Mining* are met here, Plaintiff's wrongful foreclosure and declaratory judgment claims must be dismissed. *See, e.g.*, *Blank v. Optimum Fin. Servs., LLC*, 2017 WL 1508990, at *6 (E.D. Pa. 2017), *appeal dismissed*, 2017 WL 5634297 (3d Cir. 2017) (dismissing wrongful foreclosure and declaratory relief claims for lack of subject-matter jurisdiction) (Quiñones Alejandro, J.); *Laychock v. Wells Fargo Home Mort.*, 399 F. App'x 716, 718 (3d Cir. 2010) (applying *Great Western Mining* to find that *Rooker–Feldman* doctrine barred plaintiff's wrongful foreclosure claims).

Plaintiff's FDCPA claim fails for two unique reasons. First, Plaintiff has not properly alleged that Defendants are debt collectors within the meaning of the FDCPA. The facts alleged in the Complaint suggest that Defendant Wells Fargo is a "creditor" under 15 U.S.C. § 1692a(4), rather than a "debt collector," as defined in § 1692a(6), because Defendant has attempted to collect "in its own name" in initiating a foreclosure action against Plaintiff. Plaintiff has alleged no facts to suggest otherwise.[3] A creditor is not subject to liability under the FDCPA. Plaintiff therefore has not stated an FDCPA claim against Wells Fargo in response to the foreclosure. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). Second, this claim is time-barred. The FDCPA provides for a statute of limitations of one year. 15 U.S.C. § 1692k(d). Circuits are split as to whether the FDCPA's statute of limitations for an improper debt collection action begins with the filing of the underlying collection action, or at the time the debtor is served with the complaint. *See Schaffhauser v. Citibank (S.D.) N.A.*, 340 F. App'x 128, 131 (3d Cir. 2009). There is no need to grapple with that issue here, as Plaintiff's claim is barred

---

[3] Citing the FDCPA's definition for "debt collector," Plaintiff asserts a legal conclusion, stating that "Defendant Wells Fargo is a debt collector as defined in 15 U.S.C. § 1692a(6)." Compl. ¶ 27. But the facts alleged in the complaint give no credence to this conclusion of law, and for purposes of this Motion, I am not required to accept this statement as true. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009) ("The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.").

under either standard. Wells Fargo filed a foreclosure complaint in the Court of Common Pleas on March 13, 2014. Compl. ¶ 16. The state court docket indicates that Plaintiff was served with process on April 30, 2014. *See* Defs.' Ex. A, ECF No. 6-4. Plaintiff filed this action on November 6, 2017, far beyond the limitations period under the most generous interpretation of the statute.

Plaintiff has also failed to adequately state a claim for intentional infliction of emotional distress (IIED). Though the Pennsylvania Supreme Court has not yet formally adopted the standard for IIED set forth in the Restatement (Second) of Torts, the Court of Appeals and Pennsylvania's intermediate appellate courts have followed the Restatement.[4] To make out an IIED claim, a plaintiff must show that the conduct was (1) extreme and outrageous, (2) intentional or reckless, (3) caused emotional distress, and (4) that the distress was severe. *Hoy v. Angelone*, 691 A.2d 476, 482, *as modified*, 691 A.2d 485 (Pa. Super. 1997), and *aff'd*, 554 Pa. 134, 720 A.2d 745 (1998) (citing *Hooten v. Pennsylvania Coll. of Optometry*, 601 F. Supp. 1151, 1154 (E.D. Pa. 1984) and Restatement (Second) of Torts § 46). To show that distress is severe, Pennsylvania courts have required that a plaintiff allege physical injury. *Hart v. O'Malley*, 647 A.2d 542, 554 (Pa. Super. 1994), *aff'd*, 544 Pa. 315, 676 A.2d 222 (1996); *Kazatsky v. King David Mem'l Park, Inc.*, 515 Pa. 183, 191–92, 527 A.2d 988, 992 (1987).

---

[4] The Pennsylvania Supreme Court has on three occasions discussed the standard for IIED set forth in the Restatement without expressly rejecting or approving it. *See Forster v. Manchester*, 410 Pa. 192, 189 A.2d 147 (1963) (discussing the First Restatement's standard for IIED); *Papieves v. Lawrence*, 437 Pa. 373, 263 A.2d 118 (1970) (citing the Restatement (Second) of Torts § 46 in reinstating a complaint alleging IIED); *Kazatsky v. King David Mem'l Park, Inc.*, 515 Pa. 183, 197, 527 A.2d 988, 995 (1987) (expressing concern over the "subjectiveness" of the Restatement's definition for "outrageous" conduct, and concluding that "if [S]ection 46 of the Restatement is to be accepted in this Commonwealth, at the very least, existence of the alleged emotional distress must be supported by competent medical evidence").

Recognizing that Pennsylvania courts "have signaled their acceptance" of IIED, the Third Circuit has concluded that "the black letter rule of § 46 of the Restatement, along with the interpretive comments, may be applied as the basis in Pennsylvania law for [IIED]." *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1274 (3d Cir. 1979).

As a matter of law, the actions alleged here clearly fall well below the threshold of outrageous conduct necessary to state a claim for IIED in Pennsylvania.[5] *See DeHart v. HomEq Servicing Corp.*, 47 F. Supp. 3d 246, 258 (E.D. Pa. 2014), *aff'd*, 679 F. App'x 184 (3d Cir. 2017) ("In the foreclosure context, courts have been reluctant to find the level of outrageousness necessary to support a claim for IIED."); *Messer v. First Fin. Fed. Credit Union of Maryland*, 2012 WL 3104604, at *3 (E.D. Pa. 2012) (finding that allegedly fraudulent repossession and sale of plaintiff's car did not amount to "extreme and outrageous" conduct); *Brown v. Udren Law Offices PC*, 2011 WL 4011411, at *4 (E.D. Pa. 2011) ("[E]ven if defendant did not have a right to foreclose, providing notice of intention to foreclose, would not, absent a clear showing of knowledge that there was no right to foreclose, provide a basis for a cause of action for intentional infliction of emotional distress.") (quoting *Numerof v. Cont'l Title Ins. Co.*, 1987 WL 30135, at *5 (E.D. Pa. 1987)). Assuming all facts as true, Plaintiff has alleged that Wells Fargo attempted to foreclose on the property without legal standing to do so. Plaintiff has given no indication that the foreclosure action was in any other way unjustified. As compared to the facts alleged here, the rare cases in which Pennsylvania courts have allowed recovery for IIED have involved considerably more reprehensible conduct.[6]

---

[5] Plaintiff has also failed to adequately allege the severity of his emotional distress. Plaintiff attempts to demonstrate the severity of his emotional distress by alleging that the "fraudulent foreclosure" has caused him to "suffer[] many sleepless nights, severe depression, lack of appetite, and most everything related to physical, mental and emotional health, including damaged relationships with family and friends." Compl. ¶ 36. These thin recitations do not rise to the level of plausibility required to survive a motion to dismiss under the standards set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). See *Messer v. First Fin. Fed. Credit Union of Maryland*, 2012 WL 3104604, at *3 (E.D. Pa. 2012) ("Plaintiffs' allegations that they suffered 'extreme stress, anxiety and mental anguish,' 'embarrassment,' 'loss of sleep, [and loss of] appetite' are inadequate to support an inference that the emotional distress was severe, or beyond the ordinary.").

[6] *See Babul v. Relmada Therapeutics, Inc.*, 2016 WL 233699, at *7 (E.D. Pa. 2016) ("The level of outrageousness required to support a claim is extraordinarily high."); *Hoy v. Angelone*, 554 Pa. 134, 151, 720 A.2d 745, 754 (1998) ("It has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has

For these reasons, Plaintiff's Complaint must be dismissed in its entirety.  Because any amendment to Plaintiff's Complaint would be futile, dismissal shall be with prejudice.

/s/ Gerald Austin McHugh
United States District Judge

---

been characterized by 'malice,' or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort.'") (quoting Restatement (Second) of Torts § 46 cmt. d).  Examples of behavior giving rise to an IIED claim "include a driver fatally striking plaintiff's son and, without notifying the authorities, burying the body [] in [a] field . . . ; defendants intentionally falsifying records to implicate plaintiff in a homicide for which plaintiff later went to jail . . . ; and a doctor telling the press that plaintiff was suffering from a fatal disease when the doctor knew that information was false . . . ."  *Brown*, 2011 WL 4011411, at *4.